TUCKER PAVING CORPORATION AND MARYLAND CASUALTY COMPANY v. ARMCO STEEL CORPORATION

5-4115                                          411 S. W. 2d 888

Opinion delivered March 6, 1967

Smith, Williams, Friday & Bowen, for appellants.

James M. McHaney of Owens, McHaney & McHaney, for appellee.

CARLETON HARRIS, Chief Justice. Appellants, Tucker Paving Corporation (hereafter called Tucker), and Maryland Casualty Company, have appealed from a summary judgment in favor of appellee, Armco Steel Corporation (hereafter called Armco), an Ohio corporation authorized to do business in Arkansas. Tucker was principal and Maryland Casualty, surety, under two performance and payment bonds which were furnished in connection with two contracts entered into by Tucker with the Metropolitan Trust Company for certain grading, drainage and paving improvements in North Little Rock and Sherwood. Tucker subcontracted with D. H. Garner and Company for work on both jobs, and appellee sold Garner corrugated steel pipe, which was used in performing the contracts. Armco was unsuccessful in collecting its account from Garner, and accordingly, on August 25, 1965, brought action under the bonds given by Tucker, the condition (in such bonds) being that Tucker would pay all indebtedness for labor or material furnished. Armco filed a motion for summary judgment, supporting same with affidavits of Justin Matthews III, an officer of Metropolitan Trust Company and J. P. Parr, Credit Adviser, Metal Products Division of Armco. Tucker and Maryland responded to this motion by filing the affidavits of Hartley Tucker, President of Tucker Paving Corporation, and Max A. Mehlburger and Charles E. Deitz, registered professional engineers. After briefs were submitted, the court entered its judgment in favor of appellee in the amount of $7,827.13, together with costs and interest at the rate of 6% per annum from October 1, 1964. Armco was further given

judgment against Maryland Casualty Company in the additional amount of $1,023.72 as penalty, and $1,750.00 for attorney's fee. From this judgment appellants bring this appeal. For reversal, it is simply urged that the court erred in granting the motion for summary judgment, because the affidavits presented a question of fact.

Ark. Stat. Ann. § 51-636 Supp. (1965) provides, with reference to the type of bond[1] herein used:

"All persons, firms, associations and corporations who have valid claims against the bond may bring an action thereon against the corporate surety, provided that no action shall be brought on said bond after six [6] months from the date final payment is made on the contract, nor outside the State of Arkansas."

The bonds themselves likewise provide that actions (except by the owner) shall not be brought on the bonds "after six months from the date final payment is made on the contract.* * *" It is the statute and bond provisions just quoted that occasion this litigation. Appellants contend that appellee's suit was not instituted within six months from the date of final payment, and is thus barred.

The affidavits offered by appellees related the following facts:

J. P. Parr simply stated that corrugated steel pipe had been sold to Garner, subcontractor for Tucker, to be used on what we term the North Little Rock and Sherwood jobs; his company was due the sum of $7,827.13, and written demand had been made upon appellants for payment, but payment had been denied. Justin Matthews III, Vice-President and Treasurer of Metropolitan Trust Company, stated that the company had

[1]Section 51-635 provides for a surety bond which "shall be conditioned that the contractor shall faithfully perform his contract, and shall pay all indebtedness for labor and materials furnished or performed in the repair, alteration or erection."

entered into a contract with Tucker for grading, drainage and paving improvements on the two projects heretofore mentioned, and he stated that the North Little Rock job was completed on February 8, 1965; that on the following day his company paid to Tucker a sum of money which, together with previous payments, represented 95% of the contract price. The affiant further stated that his company, on June 7, 1965, paid to Tucker the 5% retainage which it had held back on February 9. As to the Sherwood job, Matthews stated that on January 5, 1965, all work was completed, and on January 11, 1965, his company paid Tucker a sum of money which, together with previous payments to that company, totaled 95% of the contract price. Five percent was retained by Metropolitan until April 8, 1965, at which time this money was paid over to that appellant.

Hartley Tucker stated that the payment made to his company on the North Little Rock job on February 9, 1965, under customary procedure in the construction industry, was considered a final payment; the same was also true of the January 5 payment, received on the Sherwood job.

From his affidavit:

"* * * In the industry, retainages after final payment are considered necessary merely for the protection of the owner to take care of minor claims and any differences as to final amounts that might arise between the contractor and the owner. However, as previously stated, it is customary in the industry to consider the payments received on January 5 and February 9, 1965, respectively, as final payments because the jobs were accepted by the owner at that time as being completed.

"Further, it is understood by Registered Engineers and Architects in the construction industry that final payment means the date the job is accepted by the owner

and the final estimate is paid. The retainage of a certain percentage thereafter is merely a safeguard to the owner, but after the final payment is made on the job accepted, no additional work is customarily performed."

The affidavits of Max A. Mehlburger and Charles E. Dietz (taken in question and answer form) were to the same effect. In other words, it is the contention of appellants that a fact question has been presented as to the meaning of the term, "final payment," it being the view of appellants that this term actually means "final estimate." It is pointed out that the 5% was retained solely for the purpose of being used for any possible minor claims of the owner or the repair of defects which the contractor had not remedied after due notice from the owner; that this money actually belonged to the contractor, though it was not received until several months later. Appellant cites two cases from other jurisdictions, one dealing with the interpretation of the words, "final settlement," appearing in a public contractor's payment bond, and the other dealing with an interpretation of the words, "final acceptance." Appellant argues that a genuine question of fact exists in the instant litigation as to the meaning of the phrase, "final payment." We do not agree. To say that the February and January payments on the two jobs (wherein Tucker received 95% of the contract price) constituted final payments is, to us, simply to say that "black" is the same as "white." Admittedly, these did not actually constitute final payments, for Tucker was subsequently paid (in April, 1965, and June, 1965) the 5% that had been withheld. We daresay that if Metropolitan had subsequently refused to pay the amounts represented by the 5%, and which had been withheld, Tucker would have instituted suit, alleging that it had not been fully paid. In the generally accepted use of the word, "final," the meaning is simply "last"—"nothing remains to be done"—"the matter is concluded." We think that the adoption of appellants' argument would do violence to our statute, and that such a holding would create uncertainty as to

the beginning of the period of limitations where it presently appears to be quite clear.

Authorities are cited by appellee construing the term, "final payment," and the constructions are entirely in line with our own interpretation. For instance, 16A Words & Phrases, "Final Payment," Page 690, states that "A final payment is the last payment."

Likewise, in *National Tea Company* v. *Patrick J. McDonough et al*, 178 Minn. 388, 227 N. W. 205, the court held that the last payment made is the final payment.

We are of the opinion that no genuine question of fact existed as to the meaning of the term, "final payment;" that it simply means the last payment, and the suit was therefore commenced within the period of limitations. It follows that there was no error in granting the summary judgment.

Affirmed.

BYRD, J., disqualified and not participating.