CREDIT GENERAL INSURANCE COMPANY *v.*
ATLAS ASPHALT, INC.

90-273                                    803 S.W.2d 903

Supreme Court of Arkansas
Opinion delivered February 18, 1991.
[Rehearing denied March 18, 1991.*]

*Junius Bracy Cross Jr.*, for appellant.

*Bill W. Walmsley*, for appellee.

STEELE HAYS, Justice. By this appeal we are asked to decide whether a supplier of construction materials is barred under Ark. Code Ann. § 18-44-508 (1987) from bringing suit under a performance bond where the suit is not filed within six months from the date an interim payment is made on the contract.

The City of Harrisburg contracted with KLW, Inc., the prime contractor, for street and sewer improvements. Asphalt paving was performed by Fields Curbco, Inc., under a subcontract with KLW dated October 22, 1986. The amount to be paid Fields Curbco under the subcontract was $87,910. Fields Curbco's performance was assured, and its suppliers protected, under a surety bond issued by Credit General Insurance

---

*Newbern, J., not participating.

Company.

Fields Curbco ordered its materials—"hot mix," oil and other products—from Atlas Asphalt, Inc. On June 4, 1987, Atlas delivered the last materials to the job and on the following day KLW made a partial payment of $10,000 to Fields Curbco, no part of which was paid to Atlas. That proved to be the final advance made to Fields Curbco, leaving a balance of $55,595.27 due under the subcontract. In October 1987, Harrisburg paid the final payment to KLW under the prime contract.

On February 9, 1989, Atlas filed suit against Fields Curbco, KLW and Credit General for $45,663.55 for some 1,660 tons of asphalt delivered by Atlas on the Harrisburg project for which it had not been paid. Fields Curbco admitted owing Atlas $49,071.65 and filed a cross complaint against KLW for $55,595.27. Credit General admitted the suretyship, denied that Atlas had delivered 1,660 tons of asphalt and affirmatively pled the statute of limitations as a defense. The trial court denied Credit General's motion for summary judgment on the statute of limitations defense, and after a bench trial found that unbeknownst to Atlas, a portion of the asphalt delivered by it to Fields Curbco, 78 tons, had been used on a different project and was not chargeable to the Harrisburg job. On that basis the trial court awarded a judgment to Atlas against Fields Curbco in the amount of $45,663.50 and against Credit General in the amount of $43,752.50, plus a twelve percent penalty and an attorney's fee of $10,701.

On appeal Credit General assigns error to three rulings by the trial court: the trial court erred in refusing to grant summary judgment on the statute of limitations defense, it was error to award statutory penalties and attorney's fees since Atlas failed to recover the full amount sought from Credit General, and the trial court erred as a matter of law in failing to find on the evidence that Atlas was barred by the statute of limitations, Ark. Code Ann. § 18-44-508 (1987). We sustain the argument with respect to the penalty and attorney's fee and otherwise affirm the judgment appealed from.

Credit General supported its motion for summary judgment with the deposition of Hal Fields of Fields Curbco, admitting that the last delivery of materials by Atlas was on June

4, 1987, and that the last payment received by his company from KLW was the $10,000 partial payment on June 5, 1987. Credit General argues that since Fields Curbco received no further payments from KLW, the last payment, hence, the "final payment," occurred on June 5, triggering the six months provided by § 18-44-508. That statute reads in part:

> All persons, firms, associations and corporations who have valid claims against the bond may bring an action thereon against the corporate surety. No action shall be brought on the bond after six (6) months from the date final payment is made on the contract. . .

Appellant Credit General relies on a single authority—the case of *Tucker Paving Corporation* v. *Armco Steel Corporation*, 242 Ark. 49, 411 S.W.2d 888 (1967). But *Tucker* in fact refutes the appellant's theory. There, the supplier, Armco, filed its suit on August 25, 1965, within six months of the payment of the five percent retainage which the owner had withheld (June 7, 1965), but not within six months of the date of payment of an amount which, with previous payments, amounted to ninety-five percent of the contract price (February 9, 1965). Tucker, arguing that Armco was barred, contended that it was the custom in the construction industry to regard the last payment prior to the retainage as the "final payment." Tucker claimed the practice among architects and engineers in the industry was to regard "final payment" as the date a job is accepted by the owner and the final estimate is paid—that the retainage is merely a safeguard. This court rejected that argument, saying that to call the February 9 payment "final" would be to say "black is white." The opinion states:

> In the generally accepted use of the word, "final," the meaning is simply "last" — "nothing remains to be done." — The matter is concluded." We think that the adoption of appellants' argument would do violence to our statute, and that such a holding would create uncertainty as to the beginning of the period of limitations where it presently appears to be quite clear.

Citing 16A Words & Phrases, *Final Payment* at 690, the *Tucker* court held that "A final payment is the last payment."

While the statute may be clear in the context of the *Tucker* case, whether it is clear per se is debatable. It provides no clue as to whether the legislature, by using the words "the contract," intended to refer only to the prime contract and not to subcontracts as well. In the absence of some clearer indication that such was the intent, we are unwilling to impose so stringent a limitation as six months on subcontractors and material suppliers and anchor it, as appellant would have us do, not to the final payment on the contract, but to an interim payment which unfortuitously proved to be the last payment made. With that in mind, we limit our holding to the rejection of the specific point argued both here and below, that is, that the June 5 payment was the final payment within the meaning of the statute and, therefore, Atlas had six months from that date to file its suit.

As to the allowance of a penalty and attorney's fee under Ark. Code Ann. § 23-79-208 (1987), we have held in several cases that a plaintiff must recover the amount claimed to be entitled to these statutory add-ons. *Southwestern Insurance Company* v. *Camp*, 253 Ark. 886, 489 S.W.2d 498 (1973). The proof in this case made it clear beyond doubt that seventy-eight tons of asphalt, which Atlas had consistently claimed, was not chargeable to the Harrisburg project and so not to Credit General. Atlas compares the facts to *USAA Life Insurance Co.* v. *Boyce*, 294 Ark. 575, 745 S.W.2d 136 (1988), where we declined to apply the rule categorically where it was within the ability of the insurer to determine the correct amount and impractical for the plaintiff to make such determination. But we cannot agree that the *Boyce* case governs. Here it is evident that Atlas knew (or is chargeable with such knowledge) as early as May 9, 1989, that Mr. Hal Fields would confirm that seventy-eight tons of asphalt went to a private owner rather than to the Harrisburg project. It would have been a simple matter to make the necessary alteration in the amount claimed.

Appellant's final point is an adaptation of its first argument, i.e., that even after a trial no facts were introduced that would toll the period of limitations beyond six months from June 5, 1987. We agree with that characterization of the proof, but for reasons already stated, we draw a different conclusion from those facts.

Affirmed as modified.

HOLT, C.J., and BROWN, J., concur in part and dissent in part.

NEWBERN, J., not participating.

ROBERT L. BROWN, Justice, concurring in part; dissenting in part. While I agree with the majority opinion in its analysis of the statute-of-limitations issue, I must dissent on the issue of statutory penalties and attorney's fees. The majority opinion would penalize Atlas Asphalt, Inc. and its attorney for failure to amend its complaint to reduce the amount complained of against Credit General from $45,663.55 to $43,752.50. The discrepancy in the amounts, as the majority points out, results from the fact that 78 tons of the asphalt sold by Atlas had been diverted from the Harrisburg job to a different project unbeknownst to Atlas. The majority opinion says that it was evident Atlas knew, after a deposition was taken, that the asphalt had been diverted. That may be, but Atlas should not be required to reduce its claim against Credit General, when the diversion has not actually been proven at trial. It is not reasonable or practical to require Atlas to speculate on what it ultimately may recover, and Atlas should not be penalized when it was Credit General's insured (Fields Curbco) that diverted the asphalt and therefore caused the credit against the amount Atlas claimed as damages.

We have previously held that where the amount claimed does not correspond to the ultimate amount recovered, we will apply the statutory penalty and attorney's fees under Ark. Code Ann. § 23-79-208. *USAA Life Ins. Co. v. Boyce*, 294 Ark. 575, 745 S.W.2d 136 (1988). In *Boyce* we said:

> . . . . even though appellee [complainant] was not as specific as he could have been in his amended complaint as to the amount of set-off under the various policies and the decreasing term benefit, he specifically made his claim to the insurance proceeds subject to these set-offs, and that is all the law requires.

294 Ark. at 581; 745 S.W.2d at 139. The opinion goes on to say that these set-offs were "facts within the peculiar knowledge of the insurance company." *Id*. A concurring opinion in *Boyce* noted that to limit recovery to awards which are the exact amount claimed "reduces the law to a bingo game," since variables at trial

can often change the ultimate award. 294 Ark. at 583; 745 S.W.2d at 140. I agree.

The statute providing the penalty and attorney's fees states that the 12 % penalty will be applied "upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." § 23-79-208 (1987). There is no statutory requirement that the amount awarded be the exact amount claimed. Moreover, in the case before us Credit General's insured, Fields Curbco, diverted the asphalt, and Credit General should not benefit from the wrongdoing of its insured by escaping assessment for the penalty and fees.

In sum, I would award the statutory penalty against the amount of the loss, $43,752.50, and reasonable attorney's fees as was done by the trial court and as required by § 23-79-208. To do otherwise does violence to the public policy considerations that led to the enactment of this statute in the first place. To the extent that *Southwestern Ins. Co.* v. *Camp*, 253 Ark. 886, 489 S.W.2d 498 (1973) and its progeny permit penalties and fees only when the exact amount is recovered, I would overrule those decisions.

HOLT, C.J., joins.